Johnson, J., dissenting:
With respect to the guilt phase, I agree with the errors identified by the majority, albeit I discern more error.
For instance, the prosecutor's use of an imaginary script was intolerable. The district court's rehabilitative coaching of mitigation-impaired venire persons undermined the fairness of the jury. A cautionary jury instruction on eyewitness testimony was legally appropriate and it was error not to give it in this case. The photograph of the victim had zero probative value because the element to be proved was that Thurber killed a human being; the victim could have been an unidentified Jane Doe for whom a photographic image was unavailable and the proof of elements would have been unaffected. And when, prior to trial, 87 percent of the people surveyed in Cowley County already think Thurber is guilty and "90 percent were very angry the crime occurred in their community," op. at 438, fundamental fairness calls for a change of venue, regardless of how well the venire persons might be coaxed during voir dire to say the magic words that will placate a reviewing court.
With respect to the penalty phase, I find that the majority's remand order is both unnecessary and faulty. It is unnecessary because we can declare Kansas' death penalty provisions to be unconstitutional for two reasons. First, it violates our constitutional prohibition against cruel or unusual punishment, set forth in the Kansas Constitution Bill of Rights, § 9. See State v. Kahler , 307 Kan. 374, 425-26, 410 P.3d 105 (2018) (Johnson, J., dissenting); State v. Kleypas , 305 Kan. 224, 348, 382 P.3d 373 (2016) (Johnson, J., dissenting), cert. denied --- U.S. ----, 137 S.Ct. 1381, 197 L.Ed.2d 560 (2017) ; State v. Robinson , 303 Kan. 11, 351-57, 363 P.3d 875 (2015) (Johnson, J., dissenting), cert. de nied *456 --- U.S. ----, 137 S.Ct. 164, 196 L.Ed.2d 138 (2016).
Second, the majority's finding that K.S.A. 2016 Supp. 21-6622(h) is unconstitutionally restrictive should mean that, pursuant to K.S.A. 21-4629, Thurber should be resentenced to life in prison. The majority's declaration that the unconstitutional provisions do not " 'authoriz[e]' " the imposition of a death sentence is unfathomable to me. See op. at 453-54. If Thurber did not meet this State's unconstitutionally narrowed definition of intellectual disability, the State of Kansas was "authorized" to impose the death penalty on him, as it actually did in this case. But if he does meet a definition of intellectual disability that is not unconstitutional, the State of Kansas is not "authorized" to impose the death sentence on him. Ergo, it was Kansas' unconstitutional definition of intellectual disability that "authorized" Thurber's death sentence. In other words, by not excluding persons that the United States Constitution required to be excluded, K.S.A. 2016 Supp. 21-6622(h)"authorized" the imposition of a death sentence on an intellectually disabled person.
If remand must occur, however, I find fault in the majority's mandate that the district court determine whether there was "reason to believe Thurber was a person with an intellectual disability in March 2009 when he raised the issue." Op. at 453. If the rationale for excluding intellectually disabled persons from state-sanctioned killing is that they are less culpable for their murderous acts, then the critical date for determining the existence of intellectual disability should be the date of the murder. On the other hand, if the rationale is to categorically spare all intellectually disabled persons from the irreversible, draconian penalty of death, then what difference does it make if the date on which such disability is established is sometime after the issue was raised?
Further, the majority recognizes that the legal test for determining intellectual disability "has changed ... profoundly" since 2009. Op. at 448. But the majority goes on to "stress that what has changed since Thurber's 2009 trial is the law-not the facts upon which that law is to be applied." Op. at 453. The majority overlooks that the profound changes in the law broaden the universe of evidence relevant to determining if a person exposed to the death penalty is intellectually disabled. See op. at 451-52. Given that the United States Supreme Court's pronouncements on the subject have changed the facts and evidence that are relevant to the constitutional inquiry, Thurber should have an opportunity to mine that new universe of evidence. This is a circumstance where the hyper-technical preservation police should holster their weapons and let justice be done, however that may turn out. See Kleypas , 305 Kan. at 274, 382 P.3d 373 (death penalty review subject to heightened reliability standard).
In sum, I would simply reverse Thurber's death sentence and remand for resentencing to life in prison without possibility of parole. But if the court remands to determine whether Thurber is intellectually disabled, then it needs to let the district court root out the answer to that question.